UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                              :
                                                       :
                        Plaintiff,                     :
                                                       :         24-CR-358 (JMF)
                -v-                                    :
                                                       :         MEMORANDUM OPINION
BRUCE MORRIS,                                          :         AND ORDER
                                                       :
                        Defendant.                     :
                                                       :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Defendant Bruce Morris is charged in a two-count indictment with the August 11, 2016 murder of Jerome Jemison and conspiracy to distribute drugs. *See* ECF No. 1. Earlier this year, he was arrested on these charges. *See* ECF No. 27 ("Gov't Opp'n"), at 3. A little more than an hour later, he participated in a voluntary interview with two law enforcement agents at the New York office of the Federal Bureau of Investigation. *See id.* at 3-4. The agents did not advise Morris about the nature of the charges before or during the interview, which was videorecorded. *See id.* at 4; *see also* Gov't Ex. 1 ("Video").[1] But they did advise Morris of his *Miranda* rights, which he waived orally and by signing a written waiver form. *See* Video at 00:01:46-00:02:51.

      Morris proceeded to speak to the agents about a wide range of topics, including his drug activity and Jemison's murder. After approximately an hour and fifteen minutes, the following exchange occurred:

      Morris:    Ok, so they need to prove. I see where this is going, So, [*gesturing to photograph of Jemison*] I love you my brother and I'm gonna to stay

---

[1]     "Gov't Ex. 1" refers to the recording of the interview, which was submitted as Exhibit 1 to the Government's memorandum of law and remains in the Government's possession.

>           in this fight.  Whatever y'all gotta do, y'all gotta do.  If I'm being
>           charged with this, then charge me.  I'm being honest.
>
> Agent:    I didn't say you are —
>
> Morris:   Because I don't know what happened to him.  I don't know how it
>           happened.  So, if I'mma be charged —
>
> Agent:    He was shot and killed —
>
> Morris:   I — You told me that.  Now, if I'm being charged with this as you
>           saying, indirectly, ohh not being charged, but y'all feel, *then get me a
>           lawyer*, and we gonna take it from there.  Because I'm being a
>           hundred.  Then, and I'm not being, you see I'm not being an asshole.
>
> Agent:    Hey Bruce, Bruce —
>
> [unintelligible as all three speak over each other]
>
> Morris:   I don't know what the fuck happened to the boy.  I don't know.
>           Listen, I don't know what happen to the boy.  You going wiretaps.
>           This this that and the third, I wouldn't give a flying fuck.  A
>           mothafucka will tell you.  You listening to shit and then you'd be like
>           this —

Video at 1:15:01-1:15:58 (emphasis added).[2]  Morris then continued speaking with the agents for another six minutes or so — sometimes unprompted, sometimes in response by their questions — before stating: "If I'm being charged, just get me a lawyer.  Let me make a phone call, and can I smoke a cigarette?"  Video at 1:21:52-1:21:59.  At that point, the interview ended.

Morris now moves to suppress the statements that he made in the interval between his statement (italicized above) "get me a lawyer" and the end of the interview, on the ground that the statement constituted an invocation of his constitutional right to counsel.  *See* ECF No. 24 ("Def.'s Mem."), at 6-7.[3]  Whether that motion should be granted turns on whether Morris

---

[2]   Morris and the Government disagree about whether Morris said "*give* me a lawyer" or "*get* me a lawyer."  *See* Gov't Opp'n 15 n.4.  The Court finds that Morris said "get me a lawyer," but the difference is ultimately immaterial.

[3]   Morris also moved to suppress statements he made during a 2016 interrogation, *see* Def.'s Mem. 4-6, but on October 15, 2024, the Court orally denied that portion of his motion as

"clearly asserted his right to have counsel present during custodial interrogation." *Davis v. United States*, 512 U.S. 452, 454 (1994). Clearly asserting the right requires "speak[ing] clearly enough that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011) (internal quotation marks omitted). Furthermore, the Supreme Court has held that if a suspect's statements are such that "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," officers are not required to cease questioning. *Davis*, 512 U.S. at 459. Finally, it must be clear from a suspect's statement that he desires "the assistance of an attorney *in dealing with custodial interrogation by the police*," not in some other manner related to his defense. *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991); *see United States v. Pinto-Thomaz*, 357 F. Supp. 3d 324, 338-39 (S.D.N.Y. 2019) ("[A] request for the assistance of counsel in some manner that does not involve assistance in responding to questions by the police does not trigger the . . . prohibition on further questioning." (internal quotation marks omitted)). In deciding whether a suspect invoked his right to counsel, a court's "inquiry is an objective one" and considers both the "plain meaning" of the suspect's words and the "inflection and emphasis" with which they are uttered. *Wood*, 644 F.3d at 92.

Although the question is close, the Court concludes that Morris's initial reference to "a lawyer" did not constitute a clear enough assertion of his constitutional right to counsel to mandate a halt to the interview. First, Morris's reference to a lawyer was more of a casual aside — tucked into a longer monologue about other matters — than it was a demand. Second, the demand (such as it was) was expressly conditioned on his "being charged" with Jemison's

---

moot based on the Government's representation that it will not use those statements during its case-in-chief, *see* Gov't Opp'n 5-6. Accordingly, it is not addressed here.

3

murder — and he did not, at that point, know that the condition had already been satisfied. Courts have held that a "conditional request for an attorney does not constitute an unambiguous request for counsel." *United States v. Spruill*, 296 F.3d 580, 588 (7th Cir. 2002); *accord United States v. Amawi*, 695 F.3d 457, 484 (6th Cir. 2012) (finding that "[s]imply mentioning the prospect of talking with an attorney" is "neither a clear nor unequivocal invocation of . . . the right to counsel"). And third, after stating "then get me a lawyer," Morris continued speaking without interruption — sometimes even talking over the agents when they attempted to interrupt him — for the next several minutes. *See, e.g.*, Video at 1:15:42-1:15:45; *cf. United States v. Oehne*, 698 F.3d 119, 124 (2d Cir. 2012) ("[E]ven assuming *arguendo* that [the suspect] did invoke his Fifth Amendment rights, he waived those rights by thereafter spontaneously discussing his offense conduct with the officers."). Indeed, during the minutes that followed, Morris continued to be cooperative, offering details about his conversations regarding the murder with others. Video at 1:18:00-1:18:10; *cf. Nguyen v. Pallares*, No. 21-15359, 2022 WL 1566975, at *1 (9th Cir. May 18, 2022) (summary order) ("Nor was the state court unreasonable to rest its determination [that suspect did not invoke right to counsel] in part on [the suspect]'s eagerness to continue speaking and volunteering information to police after her purported invocation."). Morris's subsequent words, actions, or demeanor did not indicate that he had a "desire to deal with the police only through counsel." *McNeil*, 501 U.S. at 172.

In short, at most, a reasonable officer under the circumstances "would have understood only that [Morris] *might* be invoking the right to counsel," which, as noted above, does "not require the cessation of questioning." *Davis*, 512 U.S. at 459; *see, e.g., Diaz v. Senkowski*, 76 F.3d 61, 63 (2d Cir. 1996) (holding that the defendant did not clearly invoke his right to counsel when he said "I think I want a lawyer" and when asked to clarify said "Do you think I need a

4

lawyer?"); *United States v. Brathwaite*, No. 17-CR-45 (RLM), 2018 WL 1787943, at *3 (E.D.N.Y. Mar. 27, 2018) (same when the defendant stated "I'd like to speak to an attorney . . . . I mean I'd like to get my own attorney, yeah," but when pressed for clarification said "we can continue"), *report and recommendation adopted*, No. 17-CR-45 (SJ), 2018 WL 1785484 (E.D.N.Y. Apr. 13, 2018).  In arguing otherwise, Morris asks the Court to focus exclusively on the words "get me a lawyer."  *See* Def.'s Mem. 7.  Admittedly, if the Court knew only that Morris had uttered those words, and did not have the benefit of a videorecording of the full interview, it might well have reached a different conclusion than the one it reaches here.  *See, e.g.*, *Wood*, 644 F.3d at 92 n.7 (stating that the court was reviewing a "literal, uninflected reading" of the suspect's statement).  But the recording reveals that Morris uttered the words "get me a lawyer" only in passing, as part of a conditional statement, and that he continued — without interruption — to engage in friendly banter with the agents.  With the benefit of that full record, the Court concludes that Morris did not "speak clearly enough that a reasonable police officer in the circumstances would understand the statement to be a request" for the assistance of an attorney, *Wood*, 644 F.3d at 91 (internal quotation marks omitted), let alone for "the assistance of an attorney *in dealing with custodial interrogation by the police*," *McNeil*, 501 U.S. at 178.  Accordingly, Morris's motion to suppress is DENIED.

      The Clerk of Court is directed to terminate ECF No. 21.

SO ORDERED.

Dated: November 6, 2024
      New York, New York

                                        JESSE M. FURMAN
                                        United States District Judge